EDWARD L. CARRILLO, Plaintiff, v. INDIANA GRAIN DIVISION, INDIANA FARM BUREAU COOPERATIVE, INC., Defendant and Third-Party Plaintiff–Appellant (Ohio River Company, Third-Party Defendant–Appellee).

First District (4th Division)   Nos. 85—2649, 85—3664 cons.

Opinion filed November 6, 1986.

136

Cassiday, Schade & Gloor, of Chicago (D. Patterson Gloor, Kevin G. Burke, and Judith A. Schieber, of counsel), for appellant.

Snyder & Gerard, of Chicago (Michael A. Snyder, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

This is a maritime personal injury action arising under the Longshoremen's and Harbor Worker's Compensation Act (LHWCA) (33 U.S.C. sec. 901 *et seq.* (1976)). Jurisdiction in this court is predicated upon 28 U.S.C. sec. 1333(1) (1976).

The plaintiff, Edward L. Carrillo, was injured on July 3, 1978, while working as a longshoreman, during the course of loading grain onto a barge moored alongside a grain elevator on Lake Calumet. The third-party defendant, Ohio River Company (the shipowner), is the owner of the barge. The defendant/third-party plaintiff, Indiana Grain Division, Indiana Farm Bureau Cooperative, Inc. (the stevedore), is the owner of the grain elevator where the loading was taking place. Hired by the shipowner, the stevedore had the responsibility of opening, moving, and securing the covers on the barge. Carrillo, an employee of Chicago Grain Trimmers, was hired to actually load the barge with grain from the elevator. Carrillo's injury occurred when the No. 7 hatch cover, upon which he was standing, rolled forward, causing him to fall onto the deck of the barge.

The stevedore, Indiana, filed a cross-claim for indemnity and contribution against the shipowner, Ohio. The shipowner subsequently filed a cross-claim against the stevedore for indemnity based on its breach of its implied warranty of workmanlike performance. Prior to trial, Carrillo dismissed the shipowner and the shipowner withdrew its cross-claim for indemnity, reserving the issue of attorney fees. Following a jury trial, a verdict was rendered in favor of Carrillo and against the stevedore. The jury also found in favor of the shipowner on

the stevedore's action for indemnity and contribution. Thereafter, the court awarded the shipowner $46,326.47 in attorney fees and expenses against the stevedore incurred in defending both Carrillo's action and the third-party action filed against it by the stevedore.

The stevedore raises three issues on appeal: (1) whether the jury instructions concerning the stevedore's burden of proof on its third-party complaint against the shipowner properly set forth the applicable law; (2) whether the award of attorney fees and expenses against the stevedore was erroneous; and (3) whether the trial court erred in denying the stevedore's motion to quash the use at trial of a statement of an employee of the stevedore on the basis the statement had been obtained in violation of the attorney-client privilege.

The barge had eight interlocking hatch covers which permitted access to the cargo hold. Carrillo's job was to load the barge with grain delivered by spouts from the grain elevator. He accomplished his work by standing on top of a barge hatch cover and directing the spout to different areas of the cargo hold to permit an even distribution throughout the hold in the barge. Upon the date of the injury, the center of the barge had been loaded first, and then the hatch covers were moved by the stevedore's employees. The covers at the center of the barge were closed, and the No. 7 hatch cover was rolled over the No. 8 hatch cover at the afterend of the barge. The No. 7 hatch cover was unsecured at the time Carrillo was standing on top of it, thereby causing the cover to roll, resulting in Carrillo's injuries.

Each barge hatch cover was equipped with two locking devices that operated by sliding a 14-inch long "drop latch" into a slot. Both locking devices had to be operating properly in order for the hatch covers to be secured. If both locking devices were not operating properly, the covers could slide open. Several months prior to the accident, the shipowner had a condition survey performed on the barge, which involved an inspection and report on the condition of the vessel. The condition survey stated that a new drop latch with a holding pin should be installed on cover No. 7. Although certain repairs were then made based on the results of the condition survey, there was no indication that the drop latch on cover No. 7 was replaced at any time prior to the accident.

█▌ Before addressing the first issue concerning jury instructions, a discussion of the relevant Federal law to be applied would be beneficial. As Carrillo was injured while working as a longshoreman on navigable waters, the substantive law to be applied in the instant case is Federal admiralty law. (*Pope & Talbot, Inc. v. Hawn* (1953), 346 U.S. 406, 409, 98 L. Ed. 143, 151, 74 S. Ct. 202, 205.) The standard of care

which shipowners owe to longshoremen is governed by the LHWCA. Before the enactment of the 1972 amendments to the LHWCA, injured longshoremen could recover against shipowners for the unseaworthiness of a vessel. (*Seas Shipping Co. v. Sieracki* (1946), 328 U.S. 85, 90 L. Ed. 1099, 66 S. Ct. 872.) A duty of seaworthiness is a duty to guarantee the safety of the vessel without regard to the shipowner's fault, thereby imposing strict liability upon the shipowner. Consequently, a shipowner was liable, as a third party, for injuries suffered by longshoremen as a result of "unseaworthy" conditions even though the unseaworthiness was caused, created, or brought into play by the stevedore or an employee of the stevedore. However, in such instances, the shipowner could get indemnity from the stevedore on the theory that the stevedore had breached an express or implied warranty of workmanlike performance to the vessel. *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.* (1956), 350 U.S. 124, 100 L. Ed. 133, 76 S. Ct. 232.

With the 1972 amendments to the LHWCA, negligence was substituted for seaworthiness as the standard of liability in actions by longshoremen against shipowners and the shipowners' right of indemnity against the stevedore who employed the longshoremen was abolished. (33 U.S.C. sec. 905(b) (1976); H. R. Rep. No. 1441, 92d Cong., 2d Sess. 3, *reprinted in* 1972 U.S. Code Cong. & Admin. News 4698, 4703, 4704.) The purpose of the amendments was to place a longshoreman-employee injured aboard a vessel in the same position he would be in if he were injured in nonmaritime employment ashore. Hence, the old no-fault concept of seaworthiness was eliminated and the new standard of reasonable care was imposed on the shipowner. H. R. Rep. No. 1441, 92d Cong., 2d Sess. 3, *reprinted in* 1972 U.S. Code Cong. & Admin. News 4698, 4704.

●2 The first issue raised on appeal concerning jury instructions raises the question of the shipowner's duty. We are guided by *Scindia Steam Navigation Co. v. De Los Santos* (1981), 451 U.S. 156, 68 L. Ed. 2d 1, 101 S. Ct. 1614. In *Scindia*, the United States Supreme Court outlined the duties a shipowner owes to the stevedore and its longshoremen. Initially, before the loading or unloading operations begin, the shipowner must at least exercise "ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety." The shipowner may rely on the stevedore to perform its work with reasonable care, but must warn the stevedore of "any hazards on the ship or with respect to its equipment that are known to the vessel

or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work." 451 U.S. 156, 167, 68 L. Ed. 2d 1, 12, 101 S. Ct. 1614, 1622, citing *Federal Marine Terminals, Inc. v. Burnside Shipping Co., Ltd.* (1969), 394 U.S. 404, 416 n.18, 22 L. Ed. 2d 371, 381 n.18, 89 S. Ct. 1144, 1151 n.18.

■ Once the work starts, the shipowner has no general duty to monitor the stevedoring operation "absent contract provision, positive law, or custom to the contrary," and it may rely on the stevedore's judgment that equipment is reasonably safe for continued use during the work. "The shipowner, within limits, *is* entitled to rely on the stevedore and owes no duty to the longshoremen to inspect or supervise the cargo operations." (Emphasis in original.) *Scindia Steam Navigation Co. v. De Los Santos* (1981), 451 U.S. 156, 172, 68 L. Ed. 2d 1, 15, 101 S. Ct. 1614, 1624-25.

■ However, the shipowner is entitled to rely on the stevedore's judgment only until the shipowner becomes aware of a hazard on the ship, and if the stevedore is unreasonably failing to protect the longshoremen against that hazard, at which time it has a "duty to intervene" and remedy the hazard. The shipowner must have actual knowledge of hazards which develop during the cargo operation but is deemed to have knowledge of hazards which exist before the work begins. *Scindia Steam Navigation Co. v. De Los Santos* (1981), 451 U.S. 156, 175-76, 68 L. Ed. 2d 1, 17-18, 101 S. Ct. 1614, 1626.

■ Applying *Scindia* to the facts of this case, we believe that the jury was properly instructed as to the stevedore's burden of proof in its third-party action against the shipowner. The instruction provided as follows:

"1. That on July 3, 1978, there existed on Barge ORG 2515, a defect in the drop latch pin of the seventh hatch cover which was known to Ohio River Company or discoverable by it in the exercise of ordinary care, but which was a hidden or latent defect insofar as Indiana Grain Division's employees were concerned, and which could not have been discovered by Indiana Grain Division's employees' reasonable and customary inspection;

2. That the defect in the drop latch pin of the seventh hatch cover was a proximate cause of injury to the Plaintiff Edward Carrillo;

3. That the Third-Party Defendant Ohio River Company

should have expected that an expert and experienced stevedore, if reasonably competent in the performance ·of his work, would have neither discovered nor anticipated the hidden or latent defect;

4. That the hidden or latent defect caused barge ORG 2515 to be in such condition that an expert and experienced stevedore would be unable by the exercise of reasonable care to carry on its loading operations with reasonable safety to persons.

If you find from your consideration of all the evidence that each of the propositions required of Indiana Grain has been proved, then you must determine to what extent Ohio River Company's wrongful conduct contributed to cause the Plaintiff's injury.

If, on the other hand, you find from your consideration of all of the evidence that any of these propositions required of Indiana Grain has not been proved, then your verdict should be for Ohio River Company and you may not consider apportionment."

Carrillo's injury occurred during stevedoring operations. Despite the fact that the stevedore claims that the defect in the vessel existed at the time the vessel was turned over to the stevedore, *Scindia* teaches that the shipowner is entitled to assume that the stevedore will act reasonably with a view toward the safety of the longshoremen. The shipowner's duty to warn the stevedore is not triggered unless the hazard or defect was "not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work." (*Scindia Steam Navigation Co. v. De Los Santos* (1981), 451 U.S. 156, 167, 68 L. Ed. 2d 1, 12, 101 S. Ct. 1614, 1622.) If we were to accept the stevedore's position that the shipowner has a continuing duty to take reasonable steps to discover and correct dangerous conditions that develop during the cargo operations, the result would be to revive the strict liability doctrine of seaworthiness, which was extinguished by the 1972 amendments to the LHWCA.

Other instructions also properly state the standard of care owed by shipowners to longshoremen; that is, a shipowner has a duty to exercise ordinary care in delivering the vessel to the stevedore, but a shipowner may rely on the stevedore to avoid exposing the longshoremen to an unreasonable hazard, provide a reasonably safe place to work, and to take such precautions with respect to the equipment and working conditions necessary to avoid injury to the longshoremen. As *Scindia* pointed out, although the 1972 amendments relieved the stevedore of his duty to indemnify the shipowner for damages paid to longshoremen for injuries caused by the stevedore's breach of the implied war-

ranty of workmanlike performance, the amendments did not otherwise disturb the contractual undertaking of the stevedore or the rightful expectation of the shipowner that the stevedore would perform his task properly without supervision by the shipowner. (*Scindia Steam Navigation Co. v. De Los Santos* (1981), 451 U.S. 156, 170, 68 L. Ed. 2d 1, 14, 101 S. Ct. 1614, 1623-24.) Accordingly, the instructions submitted to the jury properly defined the shipowner's duty in light of the facts of the case and were properly given at trial.

■■ The stevedore next challenges the trial court's award of attorney fees and expenses to the shipowner incurred in the course of defending both Carrillo's action as well as the third-party action filed against it by the stevedore. The initial question regarding this issue concerns the elimination of the shipowner's right to indemnity against the longshoreman's employer, the stevedore, by the 1972 amendments to the LHWCA.

The general rule in admiralty cases is that attorney fees and expenses are only awarded where the nonprevailing party has acted in bad faith (*Compania Galeana, S.A. v. Motor Vessel Carribean Mara* (5th Cir. 1978), 565 F.2d 358), and to an indemnitee in a suit against the indemnitor (*Todd Shipyards Corp. v. Turbine Service, Inc.* (5th Cir. 1982), 674 F. 2d 401). As we discussed earlier, the 1972 amendments to the LHWCA expressly eliminated the unseaworthiness doctrine and limited the liability of vessels to negligence. The longshoreman's employer, the stevedore, was insulated from an indemnity action by the vessel upon a theory of breach of an implied contract of workmanlike performance, which was established in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.* (1956), 350 U.S. 124, 100 L. Ed. 133, 76 S. Ct. 232. Specifically, section 905(b), after the 1972 amendments, provides:

"[T]he employer shall not be liable to the vessel for such damage directly or indirectly [recovered from the vessel in an action by the longshoremen] and any agreements or warranties to the contrary shall be void." 33 U.S.C. sec. 905(b) (1976).

■■ The stevedore in the instant case is not covered by the literal terms of the statute since it did not employ Carrillo. The stevedore here maintains that the 1972 amendments to the LHWCA prohibit a vessel from seeking indemnification from a nonemploying stevedore on the basis of an implied warranty of workmanlike performance. This question has evoked disparate responses from Federal district courts which have considered this issue. Several have advocated the complete abolition of the *Ryan* indemnity doctrine as there is no longer the need for it with the elimination of the shipowner's duty of seaworthiness.

(*McGuire v. Lykes Brothers Steamship Co.* (E.D. Wis, 1980), 486 F. Supp. 1374; *Doca v. Marina Mercante Nicaraguense S.A.* (S.D. N.Y. 1979), 474 F. Supp. 751; *Johnson v. Global Shipping Co.* (D. Or. 1982), 1984 AMC 254.) However, other courts have read the statute literally and not applied it to nonemploying stevedores. (*Rindone v. Arya National Shipping Co.* (S.D. N.Y. 1979), 1980 AMC 196; *Meekings v. Prudential Lines, Inc.* (E.D. Va. 1979), 1981 AMC 1740.) We find this second line of reasoning to be persuasive.

There is no indication in the 1972 amendments to the LHWCA or in the legislative history evidencing a Congressional intent to prevent shipowners from bringing a *Ryan* indemnity action against nonemploying stevedores. The abolition of the employer's indemnification liabilities to the vessel was enacted as a *quid pro quo* for the elimination of the warranty of seaworthiness owed by the vessel to longshoremen. This was Congress's response to the anomalous situation whereby stevedore-employers were liable not only for workmen's compensation benefits to the employee, but were also liable to indemnify the shipowner for any damages in the longshoreman's suit against the shipowner. (H.R. Rep. No. 1441, 92d Cong. 2d Sess. 3, *reprinted in* 1972 U.S. Code Cong. & Admin. News 4698, 4702-03.) Otherwise, there is no indication that the legislative compromise behind the 1972 amendments to the LHWCA applies to nonemploying stevedores.

■ Further, even though Carrillo's claim against the shipowner was dismissed prior to trial, the stevedore is obligated to indemnify the shipowner for any loss incurred by the shipowner caused by the stevedore's negligence. (*Massa v. C.A. Venezuelan Navigacion* (2d Cir. 1964), 332 F.2d 779, *cert. denied* (1964), 379 U.S. 914, 13 L. Ed. 2d 186, 85 S. Ct. 262; *Rindone v. Arya National Shipping Co.* (S.D. N.Y. 1979), 1980 AMC 196.) Therefore, we hold that the trial court had the authority to award the shipowner's attorney fees and expenses.

Finally, the stevedore challenges the reasonableness of the amount of fees awarded. The stevedore asserts that the trial court failed to consider such factors as the time and labor required of the attorneys, the novelty and difficulty of the case, the skill required to perform the legal services properly, the customary fee for similar work in the community, and the experience, reputation, and ability of the attorney. However, the record on appeal does not reflect the trial court's reasons for ordering the amount of fees awarded, as the report of proceedings at which the fee award was argued and ordered is not included. In its order, the trial court specifically found that the fees and expenses petitioned by the shipowner were reasonable in amount and reasonably related to the defense of the claims of the longshoreman

and of the stevedore. The shipowner's petition for fees was accompanied by exhibits which documented the computation of fees and expenses sought. In the absence of a proper record, which should have been provided by the stevedore, it must be presumed that the trial court's decision was based on its consideration of the propriety of the amount of fees sought and was supported by sufficient proof. See *Bartsch v. Gordon N. Plumb, Inc.* (1985), 138 Ill. App. 3d 188, 205, 485 N.E.2d 1105.

■ The third and final issue the stevedore raises concerns the trial court's denial of its motion to quash the use at trial of the statement of one of its employees, T. J. Johnson, on the basis that the statement had been obtained in violation of the attorney-client privilege as defined by *Upjohn Co. v. United States* (1981), 449 U.S. 383, 66 L. Ed. 2d 584, 101 S. Ct. 677. In *Upjohn*, the Supreme Court held that communications by a corporation's employees to its counsel are governed by the attorney-client privilege. We find that the privilege has no application to the instant case.

Prior to trial, attorneys for the shipowner contacted a number of employees of the stevedore and obtained statements from them. The statements were obtained without notice to the stevedore's counsel. One of the employees whose statement was obtained was the stevedore's assistant foreman, T. J. Johnson. However, as the attorney-client privilege extends only to communications with the stevedore's counsel, the privilege could not be invoked here as Johnson never communicated with the stevedore's counsel. Even if Johnson had communicated with counsel for the stevedore, under the attorney-client privilege, as defined by *Upjohn*, the shipowner was only prevented from questioning Johnson about the actual fact of communication with the stevedore's counsel and was free to question Johnson about the underlying facts within his knowledge that were communicated. *Upjohn Co. v. United States* (1981), 449 U.S. 383, 395, 66 L. Ed. 2d 584, 594, 101 S. Ct. 677, 685.

Accordingly, for the foregoing reasons, the judgment of the circuit court of Cook County entered in favor of the shipowner, Ohio River Company, and against the stevedore, Indiana Grain, on Indiana Grain's third-party action for contribution and indemnity is affirmed. Further, the order awarding attorney fees to Ohio River Company is affirmed.

Affirmed.

LINN, P.J., and JOHNSON, J., concur.