JOHN CLAXTON, Plaintiff-Appellee, v. RICHARD D. THACKSTON, SR., d/b/a A Storage Inn, Defendant and Third-Party Plaintiff (Mayer Manufacturing Corporation, Third-Party Defendant-Appellant).

First District (6th Division)   No. 1—89—1213

Opinion filed June 29, 1990.

David J. Fitzpatrick, of Matyas & Norris, of Chicago, for appellant.

Edward L. Osowski, of Chicago (James G. Andros, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

In this appeal, we are asked to decide whether an eyewitness statement given by an employee of defendant Mayer Manufacturing Corp. (Mayer) is an attorney-client communication and, therefore, privileged from disclosure under Supreme Court Rule 201(b)(2) (107 Ill. 2d R. 201(b)(2)). The circuit court ordered production; defendant refused and was held in contempt. The court then entered judgment on the contempt finding in the amount of $1 against Mayer's attorney. We therefore have jurisdiction pursuant to *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 174, 429 N.E.2d 483.

The issues on appeal are: (1) whether proponent Mayer met its burden of articulating those threshold facts which are necessary to qualify the statement as an attorney-client communication; and (2) whether an otherwise privileged attorney-client communication loses its status because it is an eyewitness report. We affirm on other ground.

The uncontested facts are these. On January 11, 1984, the plaintiff John Claxton was injured while moving equipment for his employer Mayer Manufacturing at the facility of defendant Richard D. Thackston, Sr., d/b/a A Storage Inn (Thackston), in Homewood, Illinois. Cameron MacGregor, plaintiff's supervisor, was present when the accident occurred and afterwards helped Claxton into the truck for a ride back to the Mayer plant.

Subsequently, Claxton sued Thackston for damages. Thackston brought a third-party complaint against Mayer for contribution. Claxton then noticed the deposition of MacGregor and requested production of a written statement made by MacGregor to an insurance carrier on September 4 or 6, 1984 (the record is unclear). Defendant refused to produce the statement, claiming attorney-client privilege because MacGregor was a member of the control group for the Mayer Corporation.

Plaintiff moved the court for a production order, and at a hearing on March 22, 1989, the court ordered Mayer to produce MacGregor's written statement for *in camera* inspection within seven days. The statement was not produced.

Instead, Mayer filed an affidavit by Cameron MacGregor wherein MacGregor stated that he was a member of the board of directors of Mayer at the time of the accident. Moreover, at the time of the accident, "affiant had sole authority over all manufacturing aspects of

Mayer Manufacturing Corporation and all attendant supervisory authority over all production employees." MacGregor stated further that his responsibilities also included the investigation of "all production related accidents, such as that involved in the subject occurrence, and reporting the details of the same to his corporation's liability carrier."

According to the affidavit, on September 6, 1984, MacGregor prepared a "two-page confidential letter to [Mayer's] liability insurance carrier, respecting affiant's knowledge of the January 11, 1984 accident of its then employee, the plaintiff, John Claxton." MacGregor stated that: "It was affiant's understanding that this letter was offered to assist and safeguard his corporation, Mayer Manufacturing, from any potential liability, and it was further affiant's understanding that this letter would be offered in confidence for this purpose, and that it would not be circulated for any other use."

■■ The rule governing protection of attorney-client communications and attorney work product from discovery is Rule 201(b)(2) of the supreme court rules (107 Ill. 2d R. 201(b)(2)), which provides that: "All matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure. Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney."

The party who claims a privilege " 'has the burden of showing the facts which give rise to the privilege.' " (*Cox v. Yellow Cab Co.* (1975), 61 Ill. 2d 416, 419-20, 337 N.E.2d 15, quoting *Krupp v. Chicago Transit Authority* (1956), 8 Ill. 2d 37, 42, 132 N.E.2d 532.) Among other things, the party must prove that the statement was made for a privileged purpose (*Cox*, 61 Ill. 2d at 420) and show the circumstances under which the statement was made (*Krupp*, 8 Ill. 2d at 42, 132 N.E.2d 532).

The burden of proof reflects the policy behind attorney-client privilege. Not all communications between attorney and client are privileged. The privilege exists so that a present or potential client may "consult freely with counsel without fear of compelled disclosure." (*People v. Adam* (1972), 51 Ill. 2d 46, 48, 280 N.E.2d 205, cited in *Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 118, 432 N.E.2d 250.) Under some circumstances, the privilege can pose an absolute bar to the discovery of relevant material and contravene the broad discovery which is essential for the fair disposition of a lawsuit. (*Consolidation Coal*, 89 Ill. 2d at 118.) For this reason,

courts limit the protection of the privilege, especially in a corporate context where broad privilege would effectively make most relevant material immune from discovery. *Consolidation Coal*, 89 Ill. 2d at 117-19.

To be entitled to the privilege, a claimant must show that the statement: (1) originated in a confidence that it would not be disclosed; (2) was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services; and (3) remained confidential. (*Consolidation Coal*, 89 Ill. 2d at 119.) Beyond this, a corporate claimant must show that the statement was made by someone in the corporate "control group," that is, someone who was:

"(1) *** in an advisory role to top management, such that the top management would normally not make a decision in the employee's particular area of expertise without the employee's advice or opinion; and (2) [whose] opinion [did] in fact form the basis of the final decision by those with actual authority." *Archer Daniels Midland Co. v. Koppers Co.* (1985), 138 Ill. App. 3d 276, 279, 485 N.E.2d 1301, citing *Consolidation Coal*, 89 Ill. 2d at 120.

The control-group test provides a balance between privilege and discovery. (*Consolidation Coal*, 89 Ill. 2d at 118-19.) The focus of the court for finding privilege is "on individual people who substantially influenced decisions, not on facts that substantially influenced decisions." (*Archer Daniels*, 138 Ill. App. 3d at 280.) In *Consolidation Coal* and *Archer Daniels*, for example, the court found that employees who provided the technical information about accidents and safety features to opinion makers were not themselves in the control group and, therefore, their communications were not privileged. In *Knief v. Sotos* (1989), 181 Ill. App. 3d 959, 964-65, 537 N.E.2d 832, the appellate court found that a head manager and head waitress, who had information about the drinking of a customer, were not in the control group. To argue that the statements of these two people should be protected, the proponents would have to prove "that no final decision as to this litigation would be made without first consulting the head manager and head waitress." *Knief*, 181 Ill. App. 3d at 965.

■ Under Illinois law, attorney-client privilege also extends to "communications between an insured and insurer, where the insurer is under an obligation to defend." (*Braglia v. Cephus* (1986), 146 Ill. App. 3d 241, 249, 496 N.E.2d 1171, citing *People v. Ryan* (1964), 30 Ill. 2d 456, 460, 197 N.E.2d 15.) This rule reflects the fact that the liability carrier usually selects the attorney under a common liability contract. Thus, "the insured may properly assume that the communi-

cation is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured." *Ryan*, 30 Ill. 2d at 460-61.

■ When a proponent cannot prove that a statement should be protected, submitting it for *in camera* inspection is a reasonable procedure for finding if a basis for privilege exists. *Johnson v. Frontier Ford, Inc.* (1979), 68 Ill. App. 3d 315, 321, 386 N.E.2d 112; see also 107 Ill. 2d R. 415(f).

■ Once privilege attaches to a communication, it is immaterial whether the client is or is not a party to a specific action. (*Johnson*, 68 Ill. App. 3d at 319.) While both the client who made the communication and the attorney to whom it was given can invoke the privilege, only the client can waive it. (*People v. Jacobson* (1983), 119 Ill. App. 3d 103, 105, 456 N.E.2d 218.) The same principle applies to privileged statements made to insurance carriers. Only the client can waive the privilege. *Chavez v. Watts* (1987), 161 Ill. App. 3d 664, 672, 515 N.E.2d 146.

I

■ Mayer asserts that Cameron MacGregor was a member of the Mayer control group. As a basis for this claim, Mayer points to MacGregor's affidavit in which he stated he was a director in 1984 and had sole authority over manufacturing at Mayer and responsibility for the investigation of all production-related accidents at the time of the accident. Mayer argues further that MacGregor's statement, made to the insurance company, comes under the protection explicated in *Ryan*.

Claxton contends, however, that Mayer has not proved a right to protection under *Ryan* (30 Ill. 2d at 460), wherein the court specified that the insurer must be "under an obligation to defend." Claxton notes that the record does not disclose policy coverage, the name of Mayer's carrier or any other details of the insurance contract.

The trial court did not decide whether Mayer presented sufficient facts to claim a privilege but, instead, based its holding on other criteria.

The record presented to us on appeal does not show that Mayer met its burden. MacGregor's affidavit does not state facts to show whether he was a member of the Mayer control group. It does not specify if he had an advisory role in top management, whether a decision in this area would normally not be made without his advice, or whether his opinion would in fact form the basis for any decision by others with authority in the company. (*Consolidation Coal*, 89 Ill. 2d

at 120.) Although the affidavit states MacGregor was a corporate director, Mayer does not cite authority for the proposition that directors are *ipso facto* members of the control group. Nor did Mayer present any evidence about the actual decision making power of the only non-family director in the Mayer family firm.

Furthermore, Mayer did not provide information about the insurance carrier and its duty to defend Mayer against suits arising out of the accident. The affidavit does not say who the insurance carrier was, attach a copy of the policy, specify policy coverage, or state whether or not the carrier had a duty to defend for this occurrence.

Finally, because the statement was not produced for *in camera* inspection, we are unable to determine if it was a communication for the purpose of securing legal advice.

For these reasons, we hold that Mayer has not articulated the threshold facts necessary to qualify MacGregor's statement as an attorney-client communication.

## II

■ Additionally, Mayer contends that an otherwise privileged statement prepared by Cameron MacGregor for Mayer's insurance carrier would not lose its status because MacGregor was an eyewitness to the accident. Although not necessary to our disposition of this case, we will consider this issue on appeal because it was the basis of the trial court's ruling.

The trial court ruled that factual accounts by witnesses to an event could not be protected. Such statements would be analogous to those made by the head waitress and head manager in *Knief* and, therefore, not privileged. The *Knief* case, however, was not decided because the two employees had witnessed an event. Rather, the court ruled against the proponent of privilege on the grounds that the employees were not people whose opinions had to be consulted before the corporation made final decisions about litigation. *Knief*, 181 Ill. App. 3d at 965.

None of the parties cite cases to the effect that a member of the corporate control group must disclose otherwise privileged statements simply because he or she actually witnessed the events involved. *Archer Daniels* (138 Ill. App. 3d at 280) indicates the reverse, holding that courts find privilege by looking at the people who influence decisions, not at the facts used by these people.

If factual statements could be discovered regardless of who made them, then attorney-client privilege often would not protect confidences between attorneys and their clients from sole proprietorships

or small closely held corporations. In these settings members of the control group often witness the events that lead to litigation. Without protection for their eyewitness accounts, these clients would be unable to engage in "full and frank consultation" and could not consult legal advisors without the "fear of compelled disclosure of information." *Consolidation Coal*, 89 Ill. 2d at 118.

Furthermore, the privilege protects only the attorney-client communication itself. Opposing counsel is free to question a member of the control group about the underlying facts which were communicated. *Carrillo v. Indiana Grain Division, Indiana Farm Bureau Cooperative, Inc.* (1986), 149 Ill. App. 3d 135, 144, 500 N.E.2d 682, citing *Upjohn Co. v. United States* (1981), 449 U.S. 383, 395, 66 L. Ed. 2d 584, 595, 101 S. Ct. 677, 685.

For the reasons stated, the judgment of the trial court is affirmed.

Judgment affirmed.

LaPORTA, P.J., and EGAN, J., concur.