2024 IL App (1st) 231958-U

No. 1-23-1958

Order filed July 19, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JOHN DOE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 L 688 |
| | ) | |
| THE CATHOLIC BISHOP OF CHICAGO, | ) | Honorable Scott D. McKenna |
| a Corporation sole, a/k/a THE ROMAN | ) | Judge, Presiding. |
| CATHOLIC ARCHDIOCESE OF CHICAGO, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

JUSTICE NAVARRO delivered the judgment of the court.
Justices Mikva and Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held:*    Where the circuit court did not make a finding regarding whether defendant met its burden of establishing the elements of the attorney-client privilege, we reverse the court's discovery order and remand to the circuit court for the court to make such a finding. We vacate the circuit court's order finding defendant in contempt.

¶ 2    Defendant, The Catholic Bishop of Chicago, a corporation sole, a/k/a The Roman Catholic Archdiocese of Chicago, appeals from the circuit court's order finding it in contempt for failing to comply with the court's discovery order that required defendant to produce certain documents it was withholding over defendant's contention that they were protected from

disclosure by the attorney-client privilege. We reverse the circuit court's order that required

defendant to produce certain documents, and we remand for the circuit court to make a finding

regarding whether defendant met its burden of establishing the elements of the attorney-client

privilege. We vacate the circuit court's order finding defendant in contempt.

¶ 3                                    I. BACKGROUND

¶ 4        In January 2022, plaintiff filed a complaint against defendant based on allegations

that defendant negligently retained and supervised an ordained Roman Catholic priest who was

under its direct supervision and control from 1992 to 2002. Plaintiff alleged that he was sexually

abused by the priest for three years between 1994 and 1997 when he was a minor attending the

parochial school and parish that defendant operated. Plaintiff alleged that based on recently

revealed documents, defendant knew before plaintiff's abuse that the priest had a history of

sexually abusing minors, but defendant permitted the priest to continue in ministry as a head

pastor where he had access to numerous children, including plaintiff.

¶ 5        Plaintiff also alleged that before 1992, defendant was aware of sexual abuse of minors

by priests and failed to, among other things, create, adopt, and properly implement policies and

procedures to prevent the sexual abuse of minors by priests. Plaintiff alleged that in 1991,

Cardinal Joseph Bernardin, the highest-ranking authority in the Archdiocese of Chicago from

1982 to 1996, commissioned a report on the issue of clerical sexual misconduct with minors and

that in 1992, a report titled "The Cardinal's Commission on Clerical Sexual Misconduct with

Minors" (1992 Commission Report) was submitted to Cardinal Bernardin. The 1992

Commission Report set forth facts relating to clerical misconduct by priests with minors,

empirical data regarding sexual abuse disorders, procedures regarding the investigation of child

abuse complaints, and recommendations designed to prevent child abuse by priests. In response

to the report, defendant created a new policy on clerical sexual misconduct with minors. Plaintiff alleged that even after extensive warnings from previous decades and the 1992 Commission Report, defendant concealed the nature and extent of clerical sexual abuse of minors and failed to, among other things, adopt and properly implement their own policies and procedures as well as critical safety recommendations from the 1992 Commission Report. Plaintiff alleged claims against defendant for, among other claims, negligent retention, negligent supervision, and negligence.

¶ 6                                    Plaintiff's Motion to Compel

¶ 7        During discovery, plaintiff moved to compel defendant to produce internal communications relating to the 1992 Commission Report, the creation of the 1992 policy, a 1996 Reconvened Commission Report, and communications pertaining to any other policy regarding clergy sexual misconduct with children. Plaintiff explained that defendant had objected to his request for production based on attorney-client privilege since James Serritella, an attorney who worked as "principal outside counsel and legal advisor" for defendant for 50 years, and John O'Malley, an attorney who worked as Director of Legal Services for defendant from 1992 to 2014, were part of the requested communications.

¶ 8        Plaintiff argued that the communications he sought were not privileged. He further argued that "[t]o the extent any such privilege ever existed," under the subject matter waiver doctrine, defendant waived the attorney-client privilege. Specifically, he asserted that with respect to communications surrounding its policies on clergy sexual misconduct in the 1990s, defendant waived the attorney-client privilege because it had repeatedly published O'Malley's and Serritella's specific recommendations on the same subject in the 1992 Commission and the 1996 Reconvened Commission reports.

¶ 9                             Response to Motion to Compel

¶ 10      In response, defendant argued that the subject matter waiver doctrine did not apply because O'Malley's and Serritella's public statements and recommendations set forth in the 1992 Commission and 1996 Reconvened Commission reports were never intended to be confidential communications. Because the communications were not intended to be confidential, defendant argued that the publication of those statements did not waive the attorney-client privilege.

¶ 11      Defendant also argued that privileged communications made in an "extrajudicial context," as here, did not constitute subject matter waiver of the attorney-client privilege, as waiver only results if a client later uses those communications to gain a tactical advantage in litigation. Defendant argued that O'Malley's and Serritella's statements were made outside of litigation and that defendant did not assert any claim, defense, or argument in this litigation that put its attorneys' confidential advice at issue such that it waived the attorney-client privilege.

¶ 12                        Plaintiff's Reply to the Motion to Compel

¶ 13      In plaintiff's reply, he asserted that the circuit court need not address the issue of whether waiver applied to the communications he sought because defendant did not identify potentially responsive documents or proffer the necessary information to establish the attorney-client privilege. He argued that defendant must establish the elements of privilege under Illinois Supreme Court Rule 201(n) (eff. Mar. 17, 2023), which requires the objecting party to specifically identify the privilege and to submit a privilege log describing the nature of the documents, communications or things not produced, and the exact privilege it was claiming.

¶ 14                             Circuit Court's Orders

¶ 15      At the hearing on plaintiff's motion to compel, the circuit court ordered defendant to produce a privilege log and submit to the court for an *in camera* review the internal

communications relating to the development of the 1992 and 1996 policies. In a written order, the court ordered defendant to provide the court the alleged privileged communications relating to the "1992 Cardinal's Commission on Clerical Sexual Misconduct," the 1992 policy titled "Clerical Sexual Misconduct with Minors: [P]olicies for Education, Prevent[ion] Assistance to Victims and Procedure for Determination of Fitness of Ministry," the "1996 Reconvened Cardinal's Commission on Clerical Sexual Misconduct," "as well as a privilege log identifying the basis for asserting privilege over each record."

¶ 16    After conducting an *in camera* review, in a written order on September 19, 2023, the circuit court denied plaintiff's motion to compel with respect to certain documents based on attorney-client privilege and work-product privilege but granted the motion to compel as to other documents that are at issue here. As for the documents the court ordered defendant to produce, the court stated that it found a "substantive distinction between communications involving John O'Malley and James Serritella for 'typical' attorney consultation and advice, and those communications which were inextricably linked to the formulation of corporate policy that are directly relevant to the issuers [*sic*] in this case."

¶ 17    On October 5, 2023, under Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016) the circuit court entered an order finding defendant in contempt for failing to comply with the discovery order requiring it to produce the documents set forth in that order, and it imposed a monetary penalty of $1. Defendant now appeals the circuit court's orders under Rule 304(b)(5).

¶ 18                                    II. ANALYSIS

¶ 19    Defendant contends that the circuit court erred when it ordered defendant to produce the internal communications with its attorneys because the documents are confidential communications between defendant and its legal counsel for the purpose of rendering legal

5

advice. Defendant argues that the circuit court did not apply the correct standard when it evaluated the attorney-client privilege and ordered production of the documents. Defendant also asserts that it did not waive any privilege, as the public statements made by defendant's attorneys were never intended to be confidential communications and, even if the statements were intended to be confidential, subject matter waiver does not apply because they were extrajudicial disclosures.

¶ 20    Initially, we note that Rule 304(b)(5) permits a party to appeal a circuit court's order "finding a person or entity in contempt of court which imposes a monetary or other penalty." Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016). Under Rule 304(b)(5), "the only order that is subject to review is the *order* finding [a party] in contempt," but "[t]he review of a contempt finding necessarily requires review of the order upon which it is based." (Emphasis in original.) *In re Marriage of Nettleton*, 348 Ill. App. 3d 961, 968 (2004). As such, where, as here, a party "appeals a contempt judgment imposed for violating a discovery order, that discovery order is also subject to appellate review." *Youle v. Ryan*, 349 Ill. App. 3d 377, 380 (2004). Generally, we review discovery orders under the abuse of discretion standard. *Garvy v. Seyfarth Shaw LLP,* 2012 IL App (1st) 110115, ¶ 29. However, we review *de novo* a circuit court's decision regarding whether the attorney-client privilege applies. *Id.* Under *de novo* review, we "perform the same analysis that a trial court would perform" (*Adler v. Greenfield*, 2013 IL App (1st) 121066, ¶ 40) and "may affirm on any basis in the record regardless of whether the trial court relied on that basis or its reasoning was correct." *Westfield Insurance Co. v. West Van Buren, LLC,* 2016 IL App (1st) 140862, ¶ 11.

¶ 21    As previously discussed, the circuit court ordered defendant to produce certain documents over its contention that they were protected by the attorney-client privilege. Illinois

Supreme Court Rule 201(b)(2) (eff. Mar. 17, 2023) provides that certain attorney-client communications are "privileged against disclosure on the trial" and through any discovery, including "privileged communications between a party or his agent and the attorney for the party." Our supreme court has explained that "[w]here legal advice of any kind is sought from a lawyer in his or her capacity as a lawyer, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by the client or lawyer, unless the protection is waived." *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 30. The privilege includes "both the client's communications to the attorney and the attorney's advice to the client." *People v. Radojcic*, 2013 IL 114197, ¶ 40.

¶ 22        The purpose of the attorney-client privilege "is to encourage clients to engage in full and frank discussion with their attorneys without the fear of compelled disclosure of information." *Garvy*, 2012 IL App (1st) 110115, ¶ 30. The attorney-client privilege "has been described as being essential 'to the proper functioning of our adversary system of justice.' " *In re Marriage of Decker*, 153 Ill. 2d 298, 312-13 (1992) (quoting *United States v. Zolin*, 491 U.S. 554, 562 (1989)). However, because the privilege may bar "the discovery of relevant and material facts, it is an exception to the general duty to disclose and is interpreted narrowly." *Adler*, 2013 IL App (1st) 121066, ¶ 41. The attorney-client privilege must "be strictly confined within its narrowest limits and limited solely to those communications which the claimant either expressly made confidential or which he could reasonably believe under the circumstances would be understood by the attorney as such." *Center Partners, Ltd.*, 2012 IL 113107, ¶ 32. In Illinois there is "a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit." *Waste Management, Inc. v. International Surplus Lines Insurance Co.,* 144 Ill. 2d 178, 190 (1991).

¶ 23 Further, "courts limit the protection of the privilege, especially in a corporate context where broad privilege would effectively make most relevant material immune from discovery." *Claxton v. Thackston*, 201 Ill. App. 3d 232, 235 (1990). In addition, "when a client discloses to a third-party a privileged communication, that particular communication is no longer privileged and is discoverable or admissible in litigation." *Center Partners, Ltd.*, 2012 IL 113107, ¶ 35. "The party claiming the attorney-client privilege has the burden to present factual evidence establishing the privilege." *Caldwell v. Advocate Condell Medical Center*, 2017 IL App (2d) 160456, ¶ 71.

¶ 24 Our supreme court has explained that "when there is an attorney-client relationship in which an attorney and client have communicated in a professional capacity *** , there is a rebuttable presumption that their communication is privileged." *In re Marriage of Decker*, 153 Ill. 2d at 328-29. However, if the "the opposing party challenges the presumption, then the proponent of the privilege must prove the existence of the essential elements giving rise to the privilege." *Id.* at 329. Our supreme court also stated that "a mere assertion that a matter is confidential and privileged will not suffice to prove the privilege, if at all challenged by the opposing party." *Id.* at 328.

¶ 25 Here, defendant asserts that plaintiff "implicitly conceded" that the attorney-client privilege existed with respect to the communications at issue because he argued in the circuit court that defendant waived the privilege when it published the recommendations from its attorneys. However, the record shows that plaintiff asserted in his motion to compel that the communications it sought were not privileged and that "[t]o the extent any such privilege ever existed," defendant waived the privilege. In plaintiff's reply to the motion to compel, he argued that defendant failed to proffer the necessary information to establish the attorney-client privilege

8

and that defendant had to establish the elements of privilege under Illinois Supreme Court Rule 201(n) (eff. Mar. 17, 2023) before the court could address whether waiver applied to the alleged privileged communications. Accordingly, we disagree with defendant's assertion that plaintiff implicitly conceded the existence of the attorney-client privilege, and we find that plaintiff sufficiently challenged the existence of the privilege in the circuit court. Therefore, there is no presumption that the communications at issue here are privileged, and as previously discussed, it is defendant's burden, as the party claiming the privilege, to present factual evidence establishing the elements of the privilege.

¶ 26    The party claiming the attorney-client privilege "must show that the statement originated in confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential." *Rounds v. Jackson Park Hospital & Medical Center,* 319 Ill. App. 3d 280, 285-86 (2001). In addition, when the party is a corporation, as here, "a corporate claimant must show that the statement was made by someone in the corporate 'control group' " (*Claxton*, 201 Ill. App. 3d at 235) and "[o]nly communications between an attorney and those in the control group are protected from disclosure." *Caldwell*, 2017 IL App (2d) 160456, ¶ 70. "If the communication is made within the control group by a control group member it is privileged." *Consolidation Coal Co., v. Bucyrus-Erie*, 89 Ill. 2d 103, 112-13 (1982). However, "[d]istribution of otherwise privileged material to individuals outside of the control group destroys the privilege." *Midwesco-Paschen Joint Venture For Viking Projects v. Imo Industries, Inc*., 265 Ill. App. 3d 654, 664 (1994).

¶ 27    "In order to determine which employees of a corporation enjoy the attorney-client privilege when communicating with an attorney on behalf of the corporation, Illinois applies the control-group test." *Caldwell*, 2017 IL App (2d) 160456, ¶ 70. Under this test, there are two tiers

of employees who qualify as members of the control group. *Doe v. Township High School District 211*, 2015 IL App (1st) 140857, ¶ 105. "The first tier consists of the decision-makers, or top management. The second tier consists of those employees who directly advise top management, and upon whose opinions and advice the decision-makers rely." *Mlynarski v. Rush Presbyterian-St. Luke's Medical Center*, 213 Ill. App. 3d 427, 431 (1991). "However, individuals who merely supply information to those in an advisory role are not members of the control group." *Caldwell*, 2017 IL App (2d) 160456, ¶ 70.

¶ 28　　　Rule 201(n) addresses claims of privilege during discovery and states:

"When information or documents are withheld from disclosure or discovery on a claim that they are privileged pursuant to a common law or statutory privilege, any such claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced or disclosed and the exact privilege which is being claimed." Ill. S. Ct. R. 201(n) (eff. Mar. 17, 2023).

Here, as previously noted, the circuit court ordered defendant to submit a privilege log to the court with the alleged protected documents for an *in camera* review. After conducting an *in camera* review, the court ordered defendant to produce the communications at issue here. Defendant contends that the communications the circuit court ordered it to produce are protected by the attorney-client privilege because they are confidential communications between client and counsel for the purpose of seeking legal advice.

¶ 29　　　Defendant has submitted the privilege log and documents for our review on appeal. Citing Bates Nos. AOC-CARD COMMISSION 223-27, 623-51 685-96, 1233-36, and 2287-2334, defendant asserts that "[a]ll but one of the subject documents involved attorney-client communications, from and/or copying either, or both, of Defendant's in-house counsel or outside

general counsel and Defendant's control group related to Defendant's formulation of reports and policies, including drafts thereof, regarding handling clergy sexual misconduct." As for the other document, defendant cites Bates No. AOC-CARD COMMISSION 2335-2344 and asserts that this document is protected by the privilege and not discoverable, as it is "a memorandum exchanged with a confidential consultant, labeled, on its face, 'Privileged & Confidential.' "

¶ 30     Plaintiff responds that defendant uses "generalizations and reference[s] to an unidentified 'control group' that has not been otherwise mentioned or established" and that defendant provided "no basis about who the consultant is, why they were retained, who was given a copy of the memorandum, etc." In defendant's reply, it asserts that plaintiff never challenged in the circuit court the assertion of a particular privilege nor requested further information on any single document after defendant produced the privilege log in August 2023, and that it therefore waived the argument that it did not establish privilege on any given document. However, it is not clear from the record whether the privilege log, which is contained in the sealed record on appeal, was submitted to plaintiff to review such that he could have asserted specific challenges to any given document, including his challenge to the control group.

¶ 31     Further, after reviewing the privilege log *in camera*, the court ordered defendant to produce the documents, but it did not make any findings as to whether the documents were not privileged or whether defendant established the elements of privilege. As noted by defendant, the court also did not find that the privilege log was insufficient or request additional information regarding any of the documents before it made its ruling. Rather, the circuit court ordered defendant to produce the documents, finding that there was a "substantive distinction between communications involving John O'Malley and James Serritella for 'typical' attorney consultation and advice, and those communications which were inextricably linked to the formulation of

corporate policy that are directly relevant to the issuers [*sic*] in this case." However, whether the documents are "inextricably linked to the formulation of corporate policy" and "directly relevant" to the issues here, is not the proper standard to apply when evaluating the attorney-client privilege. Instead, as previously discussed, for the attorney-client privilege to apply, the party claiming the privilege must "show that the statement originated in confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential." *Rounds v. Jackson Park Hospital & Medical Center,* 319 Ill. App. 3d 280, 285-86 (2001). Further, a corporate claimant must also "show that the statement was made by someone in the corporate 'control group.' " *Claxton*, 201 Ill. App. 3d at 235.

¶ 32    Accordingly, because the circuit court did not make any findings as to whether defendant met its burden to establish the elements of the attorney-client privilege and because it did not apply the proper standard when it ordered defendant to produce the alleged privileged communications, we reverse the court's discovery order and remand to the circuit court for the court to make a determination regarding whether defendant met its burden of establishing the elements of the attorney-client privilege. Given our disposition, we need not address the parties' arguments regarding whether defendant waived the privilege.

¶ 33                                   III. CONCLUSION

¶ 34    We reverse the circuit court's discovery order and remand to the circuit court for the court to determine if defendant met its burden of establishing the elements of the attorney-client privilege with respect to the documents it ordered defendant to produce in its September 19, 2023, discovery order. We vacate the circuit court's order that found defendant in contempt.

¶ 35    Discovery order reversed and remanded; contempt order vacated.