MICHAEL HYAMS, a Minor, by Patricia Hyams, His Mother and Next Friend *et al.*, Plaintiffs-Appellees, v. EVANSTON HOSPITAL *et al.*, Defendants (Alan J. Schumacher, Contemnor-Appellant).

First District (1st Division)   No. 1—91—0326

Opinion filed February 3, 1992.

254

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Scott O. Reed, of counsel), for appellant.

Hilfman & Fogel, P.C., of Chicago (Louis Hilfman, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendants' attorney, Alan J. Schumacher, appeals from an order of the circuit court which held him in contempt of court for refusing to produce certain documents demanded by plaintiffs during discovery. Schumacher was assessed a fine of $25 for his refusal to comply with the court's order. For reasons which follow, we affirm the circuit court's ruling and vacate the finding of contempt.

On June 6, 1985, plaintiffs, Patricia and Ron Hyams, on behalf of themselves and their son, Michael, filed a medical malpractice action against defendants, Evanston Hospital, Dr. Rodney Lamb, and Dr. Averon Ellis. The complaint alleged that defendants negligently cared for Patricia during Michael's birth on November 28, 1983, which resulted in injury to Michael. During the course of discovery, plaintiffs sought the production of "reports, correspondence, notes, memoranda and/or other records and documents of any parties, witnesses and agents, servants and conversations or observations with the plaintiffs, parties or witnesses with regard to the subject occurrence, and any care and treatment to the plaintiffs at any time." Plaintiffs supplemented this request by filing an additional interrogatory requesting the identity of any persons having knowledge of any alleged negligence in the treatment of Patricia and Michael.

Defense counsel objected to the request, arguing that, other than the medical records previously produced, all other documents were protected under the attorney-client privilege. In response, plaintiffs sought identification and production of the records referred to by the defense, and the court set a briefing schedule.

Defendants asserted that the statements which would be responsive to the request were either taken from defendants or their agents by counsel or were taken by personnel from the insurance carrier, pursuant to its duty to defend and indemnify defendants and their agents and employees. Counsel also noted that all individuals who gave these statements were available to be deposed.

On May 25, 1988, the court ordered production of all nonprivileged documents, identification of all materials in which privilege was claimed, and copies of the material for an *in camera* inspection. Defendants then moved for reconsideration of the order.

Meanwhile, defense counsel identified three documents to which a privilege was claimed. These documents were the typed transcriptions of recorded statements taken from nurses Helen Snead on September 17, 1985, Jane Schwab on November 5, 1985, and Cathy Perkowitz on January 27, 1987, by personnel from the hospital's insurance carrier,

acting as agents of defense counsel. Defendants asserted the attorney-client privilege and work product doctrine[1] for all three of these documents.

The circuit court modified its previous discovery order, requiring the defendants to produce all nonprivileged documents and permitting the defendants not to identify or produce all communications between the named defendants and their attorneys or insurers. The court ordered production of the nurses' statement by November 21, 1990, for an *in camera* inspection. On November 28, 1990, defendants' counsel again raised the attorney-client privilege and the work product doctrine. The court ruled that the nurses were not insured under the insurance contract. The court later found that the nurses were not part of the hospital's control group and that no attorney mental impressions had been involved in taking the three statements. Defendants were ordered to produce the statements by December 12, 1990. On January 3, 1991, defense counsel refused to produce the documents, and the court found him in contempt of court. The contempt order was stayed pending this appeal.

Initially, defendants maintain that, under *People v. Ryan* (1964), 30 Ill. 2d 456, 197 N.E.2d 15, the nurses' statements to the insurance company are protected by the attorney-client privilege because the statements were made within the context of defending the hospital under its insurance policy. The circuit court ruled that the privilege did not apply because the nurses were not named insureds.

■ Supreme Court Rule 201(b) (134 Ill. 2d R. 201(b)) governs the protection of attorney-client communications from discovery. The rule provides that

"[a]ll matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure. Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." (134 Ill. 2d R. 201(b)(2).)

Moreover, the party who claims a privilege has the burden of proving the facts which establish its existence. *Cox v. Yellow Cab Co.* (1975), 61 Ill. 2d 416, 337 N.E.2d 15.

---

[1]On appeal, defendants have abandoned their arguments based on the work product doctrine.

■ In Illinois, the attorney-client privilege extends to communications between an insured and insurer, where the insurer is under an obligation to defend. (*People v. Ryan*, 30 Ill. 2d at 460; *Braglia v. Cephus* (1986), 146 Ill. App. 3d 241, 496 N.E.2d 1171.) This rule underscores the fact that the insurance carrier usually selects the attorney under a common liability contract. Therefore, "the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured." *People v. Ryan*, 30 Ill. 2d at 460-61.

■ At bar, the circuit court stated that the nurses were not insured. Apparently, the insurance policy was never offered into evidence in the circuit court, and it has not been included in the record on appeal. No affidavits were filed attesting to the scope of the policy. Without such record evidence, it is difficult to review the circuit court's finding on this matter; however, a similar absence of such "threshold facts" proved fatal to the proponent of the privilege in *Claxton v. Thackston* (1990), 201 Ill. App. 3d 232, 237, 559 N.E.2d 82. There, the proponent, like defendants at bar, failed to provide the circuit court with information about the insurance carrier and its duty to defend the defendant. Although the proponent provided the circuit court with an affidavit, the affidavit failed to supply any information concerning the identity of the insurance carrier, the policy's coverage, and the duty to defend the lawsuit. For these reasons, the appellate court ruled the proponent had "not articulated the threshold facts necessary to qualify [the] statement as an attorney-client communication." *Claxton*, 201 Ill. App. 3d at 237.

Defendants here attempt to distinguish *Claxton* by referring to the unsupported statement made by attorney Schumacher that the nurses were covered in the policy. This argument is unpersuasive because, in *Claxton*, the appellate court found a similar statement, made in an affidavit, insufficient to meet the burden of proof necessary to claim the privilege. Based on these facts, the defendants have not met their burden in proving the facts necessary to establish the statements as attorney-client communications.

Defendants next contend that the nurses are members of the hospital's corporate control group, and as such, their statements are to be protected from disclosure.

■ ■ To be entitled to the attorney-client privilege, a claimant must show that the statement originated in a confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained

confidential. (*Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 119, 432 N.E.2d 250.) Beyond this, a corporate claimant must show that the statement was made by someone in the corporate "control group," that is, someone who was:

> "(1) *** in an advisory role to top management, such that the top management would normally not make a decision in the employee's particular area of expertise without the employee's advice or opinion; and (2) [whose] opinion [did] in fact form the basis of the final decision by those with actual authority." (*Archer Daniels Midland Co. v. Koppers Co.* (1985), 138 Ill. App. 3d 276, 279, 485 N.E.2d 1301, citing *Consolidation Coal*, 89 Ill. 2d at 120.)

The focus of the court for finding the privilege is "on individual people who substantially influenced decisions, not on facts that substantially influenced decisions." (*Archer Daniels*, 138 Ill. App. 3d at 280.) In other words, the concern is not on what was said, but on who said what.

■ Here, defendants presented no evidence which tends to prove the nurses were part of the hospital's control group. Instead, defendants refer to *Golminas v. Fred Teitelbaum Construction Co.* (1969), 112 Ill. App. 2d 445, 449, 251 N.E.2d 314, where the appellate court noted that "communications by an employee of a corporation who does not come within the 'control group' definition may never be privileged." (*Golminas*, 112 Ill. App. 2d at 449.) The court recognized that "the principle underlying the attorney-client privilege would demand that an employee's communications should be privileged when the employee of the defendant corporation is also a defendant or is a person who may be charged with liability and makes statements regarding facts with which he or his employer may be charged, which statements are given or delivered to the attorney who represents either or both of them." (*Golminas*, 112 Ill. App. 2d at 449-50, citing *D.I. Chadbourne, Inc. v. Superior Court* (1964), 60 Cal. 2d 723, 388 P.2d 700, 36 Cal. Rptr. 468.) In *Consolidation Coal*, our supreme court referred to *Chadbourne*, but did not utilize its rationale in adopting the control group test in Illinois. (See *Consolidation Coal*, 89 Ill. 2d at 119-21.) Accordingly, defendants' arguments in this area are unpersuasive. Moreover, no evidence appears to support a finding that the nurses were part of the hospital's control group. The circuit court did not err in its ruling.

■ Finally, Schumacher asks this court to vacate the contempt order because his conduct was not contemptuous and because he did not hold the circuit court in disdain or subject it to scorn.

The record clearly establishes that Schumacher's conduct was not contemptuous. The court entered the contempt order at Schumacher's request, which is the proper procedure to test on appeal a circuit court's discovery order. (See *CNR Investments, Inc. v. Jefferson Trust & Savings Bank* (1983), 115 Ill. App. 3d 1071, 451 N.E.2d 580.) Accordingly, we direct the circuit court to vacate the contempt order.

Based on the foregoing, the circuit court's order to produce the statements is affirmed and the order of contempt is vacated.

Affirmed; contempt order vacated.

BUCKLEY, P.J., and MANNING, J., concur.