DAVID BUCKMAN, Special Adm'r of the Estate of Tammy Buckman, Deceased, Plaintiff-Appellee, v. COLUMBUS-CABRINI MEDICAL CENTER *et al.*, Defendants (James Quinn, Contemnor-Appellant).

First District (5th Division)   No. 1—94—0625

Opinion filed June 9, 1995.

Ruff, Weidenaar & Reidy, Ltd., of Chicago (James R. Quinn and Todd M. Porter, of counsel), for appellant.

Motherway & Glenn, P.C., of Chicago (Nicholas J. Motherway, of counsel), for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Contemnor-appellant, James R. Quinn, attorney for defendant Columbus-Cabrini Medical Center (the Medical Center), appeals from the trial court's orders: (1) of October 4, 1993, which granted the motion of plaintiff, David Buckman, special administrator of the estate of Tammy Buckman, deceased, to compel the production of certain memoranda and required the Medical Center to produce certain memoranda of contemnor-appellant of December 11, 1992, and January 13, 1993; and (2) of January 20, 1994, finding him in contempt of court for refusal to comply with the trial court's order of October 4, 1993, requiring the Medical Center to produce certain memoranda of December 11, 1992, and January 13, 1993. The trial court also assessed a fine against contemnor-appellant in the amount of $25 for his refusal to comply with the trial court's order of October 4, 1993. On appeal, contemnor-appellant contends that: (1) the trial court erred in granting plaintiff's motion to compel the production of certain memoranda of December 11, 1992, and January 13, 1993; and (2) the trial court's order of January 20, 1994, finding contemnor-appellant to be in contempt of court for refusing to comply with its order of October 4, 1993, requiring the production of certain memoranda of December 11, 1992, and January 13, 1993, should be vacated.

We reverse and vacate the contempt order.

BACKGROUND

On June 19, 1992, plaintiff filed a medical malpractice action against defendants, the Medical Center, Katie Austin, R.N., and Kevin Finkle, M.D. The complaint sought damages for the wrongful death of the deceased and averred that defendants' negligence in the care and treatment of the deceased proximately resulted in her death.

During discovery, plaintiff caused a subpoena for deposition to be served upon Ms. Boonie Saeng-Mani, a nurse employed part-time by the Medical Center in the intensive care unit (ICU) wherein the deceased was a patient receiving medical care prior to her death. After receiving the subpoena for deposition, Ms. Saeng-Mani went to the Medical Center which, in turn, directed her to contemnor-

appellant. She subsequently met with contemnor-appellant, who later appeared on her behalf at her deposition.

In response to questions raised at Ms. Saeng-Mani's deposition taken on March 4, 1993, and in response to plaintiff's interrogatories directed to defendant, plaintiff was informed that contemnor-appellant had met with Ms. Saeng-Mani subsequent to her receipt of the subpoena for deposition and that contemnor-appellant had compiled notes from that meeting. At the deposition as well as in the answers to plaintiff's interrogatories, it was claimed that the communications between contemnor-appellant and Ms. Saeng-Mani were protected by the attorney-client privilege.

On March 26, 1993, plaintiff filed a motion to compel the Medical Center to produce certain interview notes of contemnor-appellant pertaining to his interview of Ms. Saeng-Mani. In the motion, plaintiff argued that the interview notes were not protected by the attorney-client privilege because Ms. Saeng-Mani was not a client of contemnor-appellant when the communications were made. In particular, plaintiff maintained that because Ms. Saeng-Mani was not a party to the instant litigation, and because Ms. Saeng-Mani was not a member of the Medical Center's "control group," neither the communications between contemnor-appellant and Ms. Saeng-Mani nor any resulting interview notes were protected by the attorney-client privilege.

On April 30, 1993, the Medical Center filed a response to plaintiff's motion to compel the production of certain interview notes of contemnor-appellant pertaining to his interview of Ms. Saeng-Mani. In the response, the Medical Center claimed that the relevant communications between contemnor-appellant and Ms. Saeng-Mani were made while contemnor-appellant was acting in his capacity of Ms. Saeng-Mani's attorney for the purpose of securing legal advice. The Medical Center also maintained that the Medical Center was a self-insurer hospital whereby it was duty bound to defend any lawsuit against Ms. Saeng-Mani seeking damages for negligence as averred in the instant case and that the attorney-client privilege also extended to communications between an insured and insurer. In response to plaintiff's contention that the attorney-client privilege did not apply to the interview notes because Ms. Saeng-Mani was not a member of the control group, the Medical Center further averred that Ms. Saeng-Mani's status as a member of the control group was not the only way for the privilege to be applicable and that, in the instant case, it was not determinative because: (1) the privilege also extended, and was applicable in the instant case, to communications between an insured and the insurer; (2) the control group analysis

did not apply because Ms. Saeng-Mani was a client of contemnor-appellant and was not a "corporate claimant" to whom the control group rule applied; and (3) even assuming *arguendo* that the control group analysis was proper in the instant case, because Ms. Saeng-Mani was a person who could be charged with liability in connection with the instant case, her communications with contemnor-appellant were privileged. In addition, as an alternative position, the Medical Center asserted that prior to ordering the production of contemnor-appellant's interview notes, the proper course would be for the trial court to order an *in camera* inspection of those notes.

On July 19, 1993, after an initial hearing on plaintiff's motion to compel the production of certain interview notes of contemnor-appellant, the trial court entered an order which required the Medical Center to provide the trial court with the relevant interview notes by August 9, 1993, for an *in camera* inspection and set the matter for further hearing on a later date. In its order, the trial court also required the Medical Center, by August 9, 1993, to provide the trial court with a list of those documents for which the privilege was claimed.

On October 4, 1993, at a subsequent hearing on plaintiff's motion to compel the production of certain interview notes of contemnor-appellant, the trial court made the following ruling:

> "I have gone through this material, and I find that for the most part it's either irrelevant or privileged. I find discoverable, however, the December 11th [19]92 memo and the January 13 [19]93 memo.
>
> If you're concerned about a reason, [Ms. Saeng-Mani] is not a party to the suit and is not a part of the control group. So that there's no reason to find that a conversation with her should be privileged."

The trial court subsequently entered an order which required the Medical Center to produce the relevant memoranda of December 11, 1992, and January 13, 1993, within seven days.

On October 14, 1993, the Medical Center filed a motion for reconsideration wherein the Medical Center argued that the trial court incorrectly based its decision on the control group analysis of the attorney-client privilege. The motion for reconsideration further maintained that, in its ruling, the trial court overlooked the fact that the relevant memoranda notes were conducted during an attorney-client relationship between contemnor-appellant and Ms. Saeng-Mani because, at the time that the interview notes were taken, Ms. Saeng-Mani was an employee of the Medical Center insured under the Medical Center's insurance policy and, as such, Ms. Saeng-Mani, at the relevant times, was potentially subject to tort liability.

On January 20, 1994, at the hearing on the Medical Center's motion for reconsideration, the court made the following ruling:

"Having reread [*sic*] this, I think we went through every possible consideration here, and I heard nothing today to convince me that those statements which I talked about previously should not be discovered."

In addition, at the hearing, contemnor-appellant indicated that he refused to turn over the memoranda notes at issue and requested to be held in contempt of court. The trial court, in turn, found that contemnor-appellant was in contempt of court. The trial court subsequently entered an order which: (1) denied the Medical Center's motion for reconsideration of the order of October 4, 1993, compelling the production of certain memoranda of December 11, 1992, and January 13, 1993; and (2) determined that contemnor-appellant was in contempt of court for failing to comply with the trial court's order of October 4, 1993, requiring the production of certain memoranda of December 11, 1992, and January 13, 1993.

On February 16, 1994, contemnor-appellant filed a timely notice of appeal from the trial court's orders: (1) of October 4, 1993, requiring the Medical Center to produce certain memoranda of December 11, 1992, and January 13, 1993; and (2) of January 20, 1994, which: (a) denied the Medical Center's motion for reconsideration, and (b) found contemnor-appellant in contempt of court for failing to comply with the trial court's order of October 4, 1993, requiring the production of certain memoranda of December 11, 1992, and January 13, 1993.

OPINION

## I

Initially, contemnor-appellant contends that the trial court erred in granting plaintiff's motion to compel the production of certain memoranda of December 11, 1992, and January 13, 1993.

Contemnor-appellant argues that, relative to the memoranda at issue, the attorney-client privilege extends to Ms. Saeng-Mani's communications with contemnor-appellant because the communications were made while contemnor-appellant was acting in his capacity as Ms. Saeng-Mani's attorney. Contemnor-appellant maintains that Ms. Saeng-Mani's communications with contemnor-appellant following Ms. Saeng-Mani's receipt of plaintiff's subpoena for deposition were made to contemnor-appellant while he was acting in his capacity as Ms. Saeng-Mani's attorney.

Contemnor-appellant further claims that the attorney-client priv-

ilege also extends to Ms. Saeng-Mani's communications with contemnor-appellant because Ms. Saeng-Mani was an insured under the Medical Center's self-insurance trust agreement. Contemnor-appellant points out that the Medical Center is a self-insurer hospital, whereby it is duty bound to defend any lawsuit against Ms. Saeng-Mani seeking damages for negligence as alleged in the instant case and argues that the attorney-client privilege applies to communications between the insured and the insurer and that once the privilege attaches to such communications, it is immaterial whether the insured is a party to the specific action. Contemnor-appellant asserts that, throughout the proceedings in the trial court, the trial court erroneously ignored and failed to conclude that the insured-insurer aspect of the attorney-client relationship applies to the memoranda at issue and, as such, protects the memoranda from discovery.

In addition, contemnor-appellant argues that the trial court erred in determining that if the attorney-client privilege applied to the memoranda, it would of necessity have been because Ms. Saeng-Mani was a member of the Medical Center's control group, and that because she was not a member of the control group, the attorney-client privilege did not apply to communications between her and contemnor-appellant. Contemnor-appellant maintains that Ms. Saeng-Mani's membership is not the only way for the attorney-client privilege to be applicable and that the attorney-client privilege is applicable in the instant case to communications between an insured and the insurer. Contemnor-appellant claims that the control group analysis of the attorney-client privilege does not apply to the communications between Ms. Saeng-Mani and contemnor-appellant because Ms. Saeng-Mani is not simply a "corporate claimant" to whom the control group rule applies, but rather is a client of contemnor-appellant. Contemnor-appellant also asserts that even assuming *arguendo* that the control group analysis is appropriate under the circumstances, this court should find an exception to that rule in the instant case because Ms. Saeng-Mani is an individual who could conceivably still be charged with liability and, arguably, could have been charged, at the time of her communications with contemnor-appellant, with direct liability to plaintiff since she made statements regarding facts with which she or her employer, the Medical Center, could have been or are being charged; and those statements were made to contemnor-appellant, the attorney who represents both of them.

■ Illinois Supreme Court Rule 201(b)(2) (134 Ill. 2d R. 201(b)(2)) governs the protection of attorney-client communications from discovery. The rule provides, in pertinent part:

"All matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure." 134 Ill. 2d R. 201(b)(2).

■ The privilege exists for the purpose of encouraging and promoting the full and frank consultation between a client and his or her legal advisor by removing the fear of compelled disclosure of information. (See *Consolidation Coal Co. v. Bucyrus Erie Co.* (1982), 89 Ill. 2d 103, 117-18, 432 N.E.2d 250.) Because it is the privilege, not the duty to disclose, that is the exception, the privilege ought to be strictly confined within its narrowest possible limits. (See *Waste Management, Inc. v. International Surplus Lines Insurance Co.* (1991), 144 Ill. 2d 178, 190, 579 N.E.2d 322.) However, to be entitled to the protection of the attorney-client privilege, a claimant must show that the statement originated in a confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential. (See *Consolidation Coal Co.*, 89 Ill. 2d at 119; *Hyams v. Evanston Hospital* (1992), 225 Ill. App. 3d 253, 257-58, 587 N.E.2d 1127; *Claxton v. Thackston* (1990), 201 Ill. App. 3d 232, 235, 559 N.E.2d 82.) The party who claims a privilege has the burden of coming forward with factual evidence which establishes the privilege. (See *Cox v. Yellow Cab Co.* (1975), 61 Ill. 2d 416, 419-20, 337 N.E.2d 15; *Hyams*, 225 Ill. App. 3d at 256; *Claxton*, 201 Ill. App. 3d at 234.) For the following reasons, we conclude that the memoranda at issue are protected by the attorney-client privilege because the record establishes the existence of an attorney-client relationship between contemnor-appellant and Ms. Saeng-Mani when the relevant communications were made.

■ In the present case, the record reveals that when Ms. Saeng-Mani was subpoenaed for a deposition in connection with the instant litigation, she went to the Medical Center which, in turn, directed her to contemnor-appellant. After meeting with contemnor-appellant, contemnor-appellant appeared on behalf of Ms. Saeng-Mani at her deposition in connection with the instant case. These circumstances establish that Ms. Saeng-Mani received legal advice and services. As such, we conclude that the trial court erred in determining that the relevant communications between contemnor-appellant and Ms. Saeng-Mani are not protected by the attorney-client privilege.

## II

■ Next, contemnor-appellant contends that the trial court's order of January 20, 1994, finding contemnor-appellant to be in contempt of court for refusing to comply with its order of October 4,

1993, requiring the production of certain memoranda of December 11, 1992, and January 13, 1993, should be vacated. In so arguing, contemnor-appellant points out that on January 20, 1994, following the trial court's denial of the Medical Center's motion to reconsider, contemnor-appellant respectfully requested that, for the purposes of being able to appeal this order, he be held in contempt because he refused to turn over the memoranda required to be produced by the trial court's order of October 4, 1993, and maintains that because he did not hold the trial court in disdain or subject it to scorn, the record demonstrates that contemnor-appellant's conduct was not contemptuous and, as a result, the contempt order should be vacated.

The record clearly reveals that contemnor-appellant's conduct was not contemptuous and that the trial court entered the contempt order at contemnor-appellant's request. In Illinois, this is a proper procedure to test, on appeal, a trial court's discovery order. (See *Hyams*, 225 Ill. App. 3d at 259.) Accordingly, we direct the trial court to vacate the contempt order.

For all of the foregoing reasons, the trial court's judgment to require the production of certain memoranda of December 11, 1992, and January 13, 1993, is reversed, and the trial court's order finding contemnor-appellant in contempt is vacated.

Reversed; contempt order vacated.

GORDON and McNULTY, JJ., concur.