SECOND DIVISION

FEBRUARY 6, 2001

No. 1-00-1123

KENYA ROUNDS, Special Adm'r of ) Appeal from the

Estate of Deonte Warren, Deceased, ) Circuit Court of

) Cook County

Plaintiff-Appellee, ) 

) 

v. )

) 97 L 7536

JACKSON PARK HOSPITAL AND MEDICAL ) 

CENTER, GREGORY SARIC, ) 

USHARI KOGANTI, CHEN WANG, ) 

and LEOPOLDO JURADO, ) The Honorable

) Kathy Flanagan,

Defendants-Appellants. ) Judge Presiding.

JUSTICE COUSINS delivered the opinion of the court:

Defendant-appellant, Jackson Park Hospital (JPH), appeals from the trial court's order compelling it to disclose certain documents and its order finding JPH in contempt of court for failing to turn over those documents to the plaintiff-appellee, Kenya Rounds, special administrator of the estate of Deonte Warren, deceased.  The issues presented for review are:  (1) whether the trial court erred in compelling the production of the documents where the defendant claims they were generated within the scope of the attorney-client privilege; and (2) whether the trial court erred in finding JPH in contempt of court and imposing a fine of $100 for its good-faith refusal to turn over documents it believed to be privileged. 

We affirm the discovery order and direct the trial court to vacate the contempt order.

BACKGROUND

Plaintiff, Kenya Rounds, sought to recover damages for the alleged medical malpractice of JPH and other defendants arising out of the delivery of her fetus, Deonte Warren, on May 28, 1996.  Plaintiff alleged that:  JPH was negligent in discharging Rounds from JPH after she presented the clinical signs and symptoms of placental abruption; JPH failed to inform the attending obstetrical physician of Rounds' signs and symptoms before she was discharged and transferred to St. Bernard Hospital; JPH failed to perform an emergency cesarean section on Rounds; JPH failed to utilize available obstetrical techniques which would have resulted in Deonte's delivery before his death; and JPH failed to appropriately respond to the clinical signs of vaginal bleeding, a firm uterus, and Deonte's fetal status.  Rounds alleged that, as a result of JPH's negligence, Deonte suffered injuries that resulted in his death.

In its answer, JPH admitted that it provided nursing and medical treatment to Rounds and that Drs. Saric and Koganti provided treatment to Rounds on May 28, 1996.  JPH denied that Rounds was assessed with vaginal bleeding, leaking amniotic fluid, and had a firm uterus.  JPH further denied that either Saric or Koganti ordered and/or allowed Rounds to be discharged from JPH and transferred to St. Bernard.  Finally, JPH denied all allegations of wrongdoing and negligence. 

In its response to Rounds' request for production of documents, JPH claims that it produced more than 350 pages of documents.  In response to Rounds' request for documents containing the "opinions, theories, conclusions, or estimates" regarding Rounds' physical condition and Deonte's birth, JPH responded that it had certain nursing incident reports and another document prepared by nurse Edith Nwankwo regarding the sequence of events of Rounds' transfer from JPH to St. Bernard's Hospital.  JPH asserted that these documents were made in anticipation of litigation and were otherwise protected by section 8-2101 of the Code of Civil Procedure (the Medical Studies Act) (735 ILCS 5/8-2101) (West 1998)) and, therefore, withheld them from disclosure pursuant to the attorney-client privilege and the Medical Studies Act.

On January 9, 1998, JPH was granted leave to file its response to Rounds' first supplemental request for production.  JPH claims that it provided to Rounds more than 290 additional pages of documents, excluding the nurses' incident reports and Nwankwo's statement.  In December of 1999, nurse Frye was deposed.  During Frye's deposition, the following was elicited by plaintiff's counsel:

"Q. Did you fill out an incident report?

A. Yes, I did.

Q. Why?

A. Because I was instructed to.

Q. Who instructed you to?

A. My manager.

Q. Who was your manager?

A. Andrea Howard.

* * *

Q. When did she instruct you to fill out an incident report?

A. I don't remember.

Q. Was it that same day?

A. I don't remember."

On February 10, 2000, Rounds filed a motion to compel production of the withheld documents.  The trial court ordered JPH to provide a privilege log for all documents withheld from discovery and to provide copies of such documents for an 
in
 
camera
 inspection.  On February 21, 2000, nurse Nwankwo was deposed. 

On February 23, 2000, JPH presented its privilege log, which provided:

   "1. Jackson Park Hospital and Medical Center Nursing Service Department-Special Report authored by Lavelle Frye, R.N. Privilege asserted:  Attorney-client Privilege and Medical Studies Act.

   2. Jackson Park Hospital and Medical Center Nursing Service Department-Special Report authored by Andrea Howard, R.N.  Privilege asserted:  Attorney-client Privilege and Medical Studies Act.

   3. Jackson Park Hospital and Medical Center Nursing Service Department-Special Report authored by Edith Nwankwo, R.N.  Privilege asserted:  Attorney-client Privilege and Medical Studies Act.

   4. Statement of Edith Nwankwo, R.N. regarding sequence of transfer of events.  Privilege asserted:  Attorney-client Privilege and Medical Studies Act."

On February 25, 2000, plaintiff delivered to the trial court a letter addressing the inadequacy of the privilege log.  On February 28, 2000, the court ruled that JPH failed to establish that the documents were protected under the attorney-client privilege.  The court also held that the Medical Studies Act did not protect the documents from disclosure.  The court stated:

   "With regard to the statements of these four individuals, there is no establishment of number one, whether these statements were made to an attorney; number two, if they were, who is the attorney; number three, in what capacity the attorney was acting if and when the statements were made to an attorney; number four, for what purpose the statements were made to the attorney; number five, there is no showing that the statements or reports remain confidential between the attorney purportedly to whom they were made and the maker of these statements or reports, meaning all four RNs; number six, there is no showing that any of these RNs occupied a position within the hospital control group.  They are not shown to have an advisory role.  They are not shown to be in a position of top management that would not normally make a decision without their opinion or advice.

   So none of the elements of the attorney/client privilege have been established with regard to these reports, and the objection or assertion of privilege on behalf of Jackson Park Hospital to prevent disclosure based on attorney/client privilege is overruled, and the plaintiff's motion to compel on this basis is granted.

* * *

   If a document is created in the normal course of a hospital's business or for rendering legal opinions or to weigh potential liability risks or for later corrective action by the hospital, that information is not privileged under medical studies ***. 

* * *

   It is like a standard incident report that is apparently used at the hospital for anything unusual that might occur. *** There has been no establishment of any attorney/client privilege such that these reports would be privileged from disclosure."

JPH was ordered to turn over the documents on or before March 6, 2000.  On March 17, 2000, the trial court heard arguments on JPH's motion to reconsider.  The trial court ruled that Nwankwo's affidavit did not establish the requisite elements of the attorney-client relationship and ordered JPH to provide a copy of Nwankwo's statement to Rounds.  JPH declined to do so and the trial court found JPH in contempt of court and imposed a $100 fine against it.  The trial court denied JPH's request to stay all discovery proceedings pending its appeal.

ANALYSIS 

Standard of Review

A trial court is vested with the inherent power to enforce its orders and preserve its dignity by the use of contempt proceedings.  
People v. Warren
, 173 Ill. 2d 348, 368, 671 N.E.2d 700 (1996).  Where an individual appeals a contempt judgment imposed for violating a discovery order, that discovery order is also subject to review.  
Almgren v. Rush-Presbyterian-St. Luke's Medical Center
, 162 Ill. 2d 205, 216, 642 N.E.2d 1264 (1994).  The standard of review of a discovery violation is whether the trial court abused its discretion.  
People v. Weaver
, 92 Ill. 2d 545, 559, 442 N.E.2d 255 (1982).  

I

JPH asserts that the trial court erred in failing to find that nurse Nwankwo's statement and the other nurses' special reports were protected from disclosure by the attorney-client privilege.  JPH further contends that the statements were prepared by JPH employees for JPH and, therefore, fall under the insurer-insured privilege encompassed by the attorney-client privilege.  Alternatively, JPH also contends that, under the control group analysis, Nwankwo's statement and the other nurses' special reports are privileged.  Lastly, JPH argues that the content of the documents compels the conclusion that they are privileged.

Rounds responds that the trial court correctly ruled in compelling the production of the documents, where JPH failed to establish that the documents were cloaked by the attorney-client privilege.  Rounds' maintains that the requisite facts to establish attorney-client privilege were not alleged by JPH; the claim of privilege fails under the control group analysis; and the insurer-insured privilege encompassed by the privilege does not apply to the documents prepared by the nursing staff simply because JPH is self-insured.

Illinois Supreme Court Rule 201(b)(2) provides, in pertinent part:

   "All matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure.  Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney."  166 Ill. 2d R. 201(b)(2).

The attorney-client privilege exists for the purpose of encouraging and promoting the full and frank consultation between a client and his or her legal advisor by removing the fear of compelled disclosure of information.  
Consolidation Coal Co. v. Bucyrus-Erie Co.
, 89 Ill. 2d 103, 117-18, 432 N.E.2d 250 (1982).  The party claiming the attorney-client privilege bears the burden of presenting factual evidence which establishes the privilege.  
Cox v. Yellow Cab Co.
, 61 Ill. 2d 416, 419-20, 337 N.E.2d 15 (1975).  To be entitled to the protection of the attorney-client privilege, a claimant must show that the statement originated in confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential.  
Hyams v. Evanston Hospital
, 225 Ill. App. 3d 253, 257-58, 587 N.E.2d 1127 (1992).  

In the instant case, nurse Nwankwo's undated, unnotarized affidavit states: 

   "1. I was a registered nurse on duty at Jackson Park Hospital on May 28, 1996.  I provided certain care and treatment to Plaintiff, Kenya Rounds.  After learning the outcome of the delivery of a stillborn infant by Ms. Rounds at St. Bernard Hospital, I believed that this matter would likely result in litigation.  Accordingly, I prepared and had notarized a document reflecting my involvement in the care and treatment of Kenya Rounds. 

   2. I prepared the document in question in anticipation of litigation so that, once suit was filed, I would be able to provide this document as a communication to those attorneys assigned to represent me and/or Jackson Park Hospital."  

Despite this affidavit, JPH has not presented any facts that would indicate to this court that the report was anything more than the result of a mere prediction by nurse Nwankwo.  The record does not indicate to this court that the report created by Nwankwo originated in confidence, that it would not be disclosed, was made to an attorney for legal advice or services, or remained confidential for those purposes. 

JPH relies on 
Buckman v. Columbus-Cabrini Medical Center
, 272 Ill. App. 3d 1060, 1067, 651 N.E.2d 767 (1995).  That case is distinguishable from the instant case.  In 
Buckman
, the hospital appealed from orders entered by the trial requiring production of memoranda arising out of meetings between an attorney and a nurse who was employed by the hospital on a part-time basis and who was subpoenaed by plaintiff.  In that case, the record revealed that when the nurse was subpoenaed for a deposition in connection with the litigation, she went to her employer which, in turn, directed her to the contemnor-appellant.  
Buckman
, 272 Ill. App. 3d at 1066.  She subsequently met with contemnor-appellant, who later appeared on her behalf at her deposition.  
Buckman
, 272 Ill. App. 3d at 1066.  Plaintiff filed a motion to compel the hospital to produce those interview notes reasoning that the nurse was not a party to the litigation and not a member of the control group.  
Buckman
, 272 Ill. App. 3d at 1062.  The hospital responded that such notes were relevant communications made while the nurse was securing legal advice.  
Buckman
, 272 Ill. App. 3d at 1063.  The hospital also maintained that, as a self-insurer, it was duty bound to defend any lawsuit against the nurse and that the privilege extended to communications between the insured and the insurer.  
Buckman
, 272 Ill. App. 3d at 1062.  The interview notes and a list of those documents for which the privilege was claimed were submitted to the trial court for an 
in
 
camera
 inspection.  
Buckman
, 272 Ill. App. 3d at 1063.  The trial court held that the notes were not privileged communications and ordered their production.  
Buckman
, 272 Ill. App. 3d at 1063.  The attorney refused to produce the notes and the court found the attorney in contempt for refusing to comply with the discovery order.  
Buckman
, 272 Ill. App. 3d at 1063-64.  

The issues presented for review in 
Buckman
 were whether the trial court erred in granting plaintiff's motion to compel the production of interview notes and whether the contempt finding should be vacated.  
Buckman
, 272 Ill. App. 3d at 1061.  The appellate court answered in the affirmative and directed the trial court to vacate the contempt order.  
Buckman
, 272 Ill. App. 3d at 1066-67.  In 
Buckman
, the record established the existence of an attorney-client relationship between contemnor-appellant and the nurse when the communications were made.  
Buckman
, 272 Ill. App. 3d at 1066.  The appellate court noted, "These circumstances establish that [the nurse] received legal advice and services.  As such, we conclude that the trial court erred in determining that the relevant communications between contemnor-appellant and [the nurse] are not protected by the attorney-client privilege."  
Buckman
, 272 Ill. App. 3d at 1066.  

In the instant case, however, there is no indication from the record that the documents were created subsequent to the lawsuit or at the direction of an attorney.  In fact, the reports at issue were created approximately at the time of decedent's death as "special reports" normally used for "unusual" events.  Records prepared in anticipation of litigation are not records "made in the regular course of business."  
Kelly v. HCI Heinz Construction Co.
, 282 Ill. App. 3d 36, 41, 668 N.E.2d 596 (1996).  There had not been an attorney-client relationship created prior to the creation of the reports.

JPH also relies on 
People v. Ryan
, 30 Ill. 2d 456, 197 N.E.2d 15 (1964), and 
Buckman
 to support its contention that the documents fall under the cloak of attorney-client privilege because JPH is self-insured.  In 
Ryan
, the Illinois Supreme Court held that the statement given by the insured, which was taken by an insurance company investigator following an automobile collision, retained its privileged character.  
Ryan
, 30 Ill. 2d at 461.  While the 
Buckman
 court did acknowledge the hospital's argument that the attorney-client privilege applied to communications between the insured and the insurer, it did not reach this issue in the decision.  However, because JPH failed to raise this argument prior to this appeal, it is deemed waived and this court will not address it.  See  
People v. Del Percio
, 105 Ill. 2d 372, 380, 475 N.E.2d 528 (1985).

JPH also contends that Nwankwo was a part of the control group managing Rounds' care and is therefore protected by the privilege.  JPH, again, relies on 
Buckman
.  Under the control group analysis, the only communications that are ordinarily held privileged under this test are those made by top management who have the ability to make a final decision, rather than those employees whose positions are merely advisory.  
Consolidation Coal Co.
, 89 Ill. 2d at 120.  The test focuses on the status of the employee within the hierarchy of the corporation.  
Consolidation Coal Co.
, 89 Ill. 2d at 114.  An employee's communications receive the protection of the attorney-client privilege when the claimant demonstrates that:  (1) the employee is in an advisory role to top management, such that the top management would normally not make a decision in the employee's particular area of expertise without the employee's advice; and (2) that opinion does in fact form the basis of the final decision by those with actual authority.  
Archer Daniels Midland Co. v. Koppers Co.
, 138 Ill. App. 3d 276, 279, 485 N.E.2d 1301 (1985).  

In the instant case, JPH has not demonstrated that Nwankwo or the other nurses had advisory roles to top management and that their opinions did in fact form the basis of the final decision by those with actual authority.  "[T]he concern is not on what was said, but on who said what."  
Hyams
, 225 Ill. App. 3d at 258.  

JPH further contends that whether the privilege applies bears on the content of the documents.  JPH maintains that, "on the face of these documents, then, they are privileged and have the intent of attorney-client communications."  The documents contain primarily factual statements relating to Rounds' medical condition on May 28, 1996, and the events surrounding her treatment while at JPH.  If this court would allow documents merely labeled as a "special reports" to fall under the umbrella of documents prepared in anticipation of litigation, it would potentially "insulate so much material from the truth-seeking process" that justice would no longer be served.  
Consolidation Coal Co.
, 89 Ill. 2d at 118.

JPH next contends that it should have been given the opportunity to amend its privilege log.  We hold that, while Supreme Court Rule 201(n) requires that the log describe "the nature of the documents *** not produced or disclosed" and "the exact privilege which is being claimed," the burden was on JPH to establish why the privilege was properly invoked.  166 Ill. 2d R. 201(n).  Knowing that the trial judge denied the submission of briefs on these issues, JPH should have used the log or even its petition to reconsider as its opportunity to demonstrate its factual considerations for invoking the attorney-client privilege.  

Therefore, the trial court's order to compel production of certain documents is affirmed and JPH's request to amend the privilege log is denied. 

II

JPH's final major contention is that the trial court's contempt order should be vacated because JPH's failure to comply with the court's discovery order was made in good faith and was not contemptuous of the trial court's authority.  Rounds responds that the trial court ruled correctly in finding defendant in contempt of court and imposing a fine for JPH's refusal to turn over the documents at issue.

In Illinois, requesting the trial court to enter a contempt order is a proper procedure to test, on appeal, a trial court's discovery order.  
Buckman
, 272 Ill. App. 3d at 1067.  JPH's refusal to produce was made in good faith and was not contemptuous of the court's authority.  See 
Chicago Trust Co. v. Cook County Hospital
, 298 Ill. App. 3d 396, 410, 698 N.E.2d 641 (1998).  Accordingly, we direct the trial court to vacate the contempt order.

For the foregoing reasons, we hold that the trial court's order to compel production of certain documents is affirmed, and the trial court's order finding JPH in contempt is vacated. 

Affirmed; contempt order vacated.

CAHILL, P.J. and McBRIDE, J., concur.